STATE, EX REL. PATRICK SHERIDAN, COLLECTOR OF UNION COUNTY, v. JEREMIAH VAN WINKLE, TREASURER OF THE CITY OF PLAINFIELD.

1. The charter of the city of Plainfield, approved April 4th, 1872, (*Pamph. L., p.* 1134,) devolves upon the assessor and collector of the city the duty of assessing and collecting the city's quota of state and county taxes, and also requires the city treasurer to pay such quota for each year to the county collector, out of the first moneys received by him for taxes of the year.

2. It appeared that, notwithstanding this charter, the county collector had always demanded his quota directly from the city collector, who had accordingly paid to that officer the state and county taxes as fast as collected, and had paid to the city treasurer only the city taxes; that by this course of conduct the city treasurer had been led to believe that he was in no way responsible for state and county taxes, and therefore he had disbursed his receipts, under orders of the city council, for city purposes. *Held,* that under these circumstances, the county collector was estopped from charging against the treasurer, personally, any deficiency in the state or county quotas. *Held, also,* that, although the city might be liable for such deficiency, yet no *mandamus* could be awarded against the treasurer commanding him to pay the same out of the city funds in his hands, unless the city was made a party to the proceedings, and payment had first been demanded of the common council.

3. A judgment rendered upon an imperfect presentation of facts will not be opened, unless it appears that substantial injustice is done by the judgment as it stands.

On application for *mandamus.*

Argued at June Term, 1881, before Justices DIXON and PARKER.

For the relator, *P. H. Gilhooly.*

For the defendant, *C. W. Kimball* and *C. Parker.*

The opinion of the court was delivered by

DIXON, J.   Two contests are pending between these parties, one an application by the defendant for a rehearing in their cause decided at the February Term last, (*ante p.* 125,) the other, a proceeding by the relator for a *mandamus* similar to that granted in the former case.   The law and the facts involved in both controversies are alike, and they will be considered together.

The defendant insists that by the true construction of the charter of the city of Plainfield, the assessor and collector of the city, as such, are not charged with any duty in regard to state and county taxes, but act, with reference thereto, as state and county officers directly, and consequently that neither the city nor he, as its treasurer, is under any legal obligation in the premises.   In support of these conclusions, it is argued that until 1878, the territory and inhabitants of the city were comprised within the township of Plainfield, and the duties of assessing and collecting state and county taxes within the city devolved upon the officers of the township; and that the act of March 6th, 1878, (*Pamph. L., p.* 544,) abolishing the township and including within the city limits all of its territory not transferred to the township of Fanwood, by act of the same date, (*Pamph. L., p.* 545,) is, if it be regarded as imposing upon the city, and its officers as such, any liability to assess, collect and account for state and county taxes, unconstitutional to that extent, as a special law regulating the internal affairs of the town; that no power is given by the charter to the common council, the assessor, collector or the city itself, to assess any state or county tax, or to carry over any deficiency thereof, but on the contrary, their power to tax is limited to a prescribed sum, and for city purposes, the taxes for which are by act of April 1st, 1873, (*Pamph. L., p.* 482, § 4,) made assessable and payable at other times than are the

state and county taxes by the general law; thus manifesting the purpose of the legislature to keep the city taxes distinct from the other quotas, and in no way chargeable for the same.

But these claims seem to us to rest upon a misconstruction of the charter of April 4th, 1872. *Pamph. L., p.* 1134. It may be true, that under the charter of April 2d, 1869, (*Pamph. L., p.* 1241,) no power or duty concerning state and county taxes was confided to the city or its officers, for, notwithstanding some general expressions, the more specific directions of that act seem referable to city taxes alone, which are to be assessed and collected at a special time designated, for the exclusive use of the city, (Section 28,) and by the thirty-fourth section it was declared that township officers should continue to be elected as theretofore in the township of Plainfield, of which the city was to remain a part, but certain township officers, among whom the assessor and collector are not included, were expressly forbidden to exercise their functions within the city. These clauses indicate the intention for which the defendant contends.

But when we come to the charter of 1872, the change is unmistakable. Not only do the twelfth and fifteenth sections require of the assessor and collector of the city the performance of such duties as appertain to such officers in the townships of the state, subject to the provisions of the charter, but the significant thirty-fourth section of the act of 1869, impliedly leaving with the township officers the assessment and collection of state and county taxes, is, with as much significance, omitted, and by Sections 17 and 34, the city taxes are required to be assessed and collected at the same time and in the same manner as the assessors and collectors of townships are or may be by law required to assess and collect state and county taxes, while Section 15 expressly directs that the collector shall pay over all moneys received by him for the city, as soon as collected, to the treasurer of the city, and he is to pay over to the treasurer of the state or to the collector of the county, the full quota of taxes required by law to be raised in

said city for state and county purposes.  These enactments are evidently designed to exact of the city assessor and collector those duties regarding state and county taxes which are usually performed by township officers, with this exception, that the duty of paying over these quotas out of the first moneys obtained, is transferred to the city treasurer, who is to receive at once all the taxes which the collector gets in hand. The language of the statute is not capable of any other construction.

The want of any express authority in the charter to carry over from year to year any deficiency in the collection of state and county taxes, is supplied by the general law, (*Rev., p.* 1145, § 32,) which is not at all impaired by the restriction in Section 17, of the amount which the common council may order to be raised by tax for charter purposes.  Nor is the amendment of 1873, (*Pamph. L., p.* 482, § 4,) fixing a special time for the assessment and collection of taxes in the city, inconsistent with the idea that state and county taxes are to be raised by city officers; for this act is applicable to all taxes alike.  Then, the act of 1878, (*Pamph. L., p.* 544,) while it may have been drafted by some one holding the same view of the prior acts as the defendant now urges, is not necessarily to be regarded as presenting such opinion, and, at any-rate, cannot be allowed to import into those acts, retrospectively, a meaning which they did not fairly bear.  In our judgment, it did not change the character of the duties and obligations of the city officers, but simply enlarged their sphere.

On the law, therefore, we see no ground for a rehearing of the former cause, or for doubting the liability of the defendant to a *mandamus* in the present case.

But the facts are peculiar.  In the previous suit, a *mandamus* was prayed for against both the city collector and city treasurer, upon a stipulation showing that taxes had been collected to an amount sufficient to meet the state and county quotas, and that these quotas had not been paid.  From this stipulation, nothing more appearing, the court drew the inference that the collector had passed over all his receipts to the

treasurer, as his legal duty was, and hence that he was not in default, and therefore, refused any writ against him; but we regarded the treasurer as guilty of a breach of official duty to the relator in failing to pay these quotas out of the first moneys that came to hand, and therefore awarded a writ against him, not limiting it to such city funds as he might hold, but commanding him to pay the quotas absolutely.

Now, however, it is proven that these inferences were erroneous, that in truth the county collector has always demanded and received (so far as they have been paid) the state and county quotas from the city collector directly, and that all payments made by the latter officer to the treasurer have been of city taxes specifically. From this course of procedure, insisted on by the county collector himself, the treasurer has been led to believe that none of his receipts were chargeable with state or county taxes, but that all were subject to the order of the city council for city purposes, and on this belief he has for years acted. These facts preclude the county collector from making his present complaint against the treasurer, and from asking the court to adjudge him personally in default and to command him to supply, out of his private purse, any deficit in the state or county quotas. If he has not done what the law enjoined upon him for the benefit of the state and county, it is because he has been forestalled and prevented by their more immediate representative, the county collector. We therefore must refuse to charge the treasurer personally, with any deficiency in these funds. Nor should we direct him to pay the same out of any city moneys in his hands; for, although on what now appears to be the truth, the city is responsible for the full balance of the state and county quotas, having received the benefit of these taxes which should have been first applied to pay it, yet the city has not been cited to appear, and we ought not to determine its rights without first giving it a legal opportunity to be heard. When the officer against whom a *mandamus* is sought, is not himself in default, the writ will not be granted simply because the corporation whose officer he is has failed

of its duty, unless that corporation be a party to the proceedings. *Freeholders of Ocean* v. *Township Com. of Lacey,* 13 *Vroom* 536.

Moreover, as the county collector has lost his right to charge the treasurer and is driven to a claim against the corporation solely, he must make demand upon that corporation, through the common council, which controls its funds, for the debt due him, as preliminary to a purchase of the writ of *mandamus.*

The rule against the treasurer should, therefore, be discharged.

A rule was also taken calling upon the city collector to show cause why a *mandamus* should not issue commanding him to pay over to the county collector the state and county quotas. This rule likewise, should be discharged, for the reason that the law imposes no such duty upon him. He is to pay to the city treasurer.

From these conclusions it is evident that if the facts had been made known to the court in the former controversy, the writ then awarded would not have been granted. It has, however, now been substantially obeyed. Whether a rehearing shall be accorded and the writ recalled, depends upon, not whether those rules, designed in the main to prevent injustice, have been observed, but whether, in fact, injustice has been done. We understand the defendant complied with the commands of the writ by the use of city funds only. To that extent, the writ has accomplished what we regard as the justice of the matter, the enforcement against the city of a legal claim for a deficiency in the state and county quotas charged upon it. So far, the writ should not be disturbed. If, however, it has compelled Mr. Van Winkle to pay any of this deficiency out of his own funds, the motion for a rehearing will be granted, to the end that proper restitution may be secured.